**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

ADAM M. GLOWKA,                                      )
                                                     )
    **Plaintiff,**                )
                                                     )
v.                                                   )   **Civil Action No. 5:14-18500**
                                                     )
UNITED STATES OF AMERICA, *et al.*,                  )
                                                     )
    **Defendants.**               )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following Motions: (1) Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 16), filed on September 4, 2014; (2) Plaintiff's "Motion in Opposition to Defendants' Motion to Dismiss" (Document No. 21), filed on October 6, 2014; (3) Plaintiff's Motion for Default Judgment (Document No. 26), also filed on October 6, 2014; and (4) Plaintiff's Motion to Amend Complaint (Document No. 25), also filed on October 6, 2014. Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 16) should be granted, and Plaintiff's "Motion in Opposition to Defendants' Motion to Dismiss," Motion for Default Judgment, and Motion to Amend Complaint (Document Nos. 21, 25, and 26) should be denied.

## PROCEDURAL HISTORY

On June 16, 2014, Plaintiff, acting *pro se* and formerly incarcerated at FCI Beckley, located in Beaver, West Virginia, filed his Complaint in this matter seeking relief pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and for alleged violations of his constitutional and civil rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau</u>

of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Document No. 1.) First, Plaintiff alleges he is entitled to relief under the FTCA because he suffered a personal injury due to the negligence of Medic Jeffrey Walker, an employee of the BOP. (Id.) Second, Plaintiff alleges he is entitled to relief under Bivens because Defendants violated his First, Fifth, and Eighth Amendment rights. (Id.) In his Complaint, Plaintiff names the following as Defendants: (1) United States of America; and (2) Medic Jeffrey Walker. (Document No. 1, p. 2.) Plaintiff alleges that Defendants acted with negligence and deliberate indifference by striking him with the medical transport vehicle and failing to provide medical treatment for his injuries. (Id., pp. 2 - 5.) Plaintiff explains that on June 17, 2013, he was hit by the medical transport vehicle while he was standing in the "pill line." (Id., pp. 2 - 3.) Plaintiff states that Defendant Walker was "seated comfortably, leaning back in the drivers seat, with his feet placed upon the steering wheel area, or dash board, and not in any manner operating or potentially operating the medical vehicle." (Id., p. 2.) Plaintiff explains that during a conversation with another inmate, Defendant Walker "tried to re-adjust his position, in doing so, [he] leaned forward [placing] his feet down on the vehicle's floor board and the vehicle abruptly came lurching forward." (Id., pp. 2 - 3.) Plaintiff claims that the medical vehicle "came slamming" into Plaintiff's right side with "tremendous force." (Id.) Plaintiff explains that "there was another inmate directly in front of Plaintiff that was in a wheelchair" and "the wheelchair got viciously struck and was pushed violently against the natural direction of travel causing it to break." (Id., p. 3.) Plaintiff acknowledges that "[a]s soon as the Defendant, Medic Walker, got the vehicle to stop, he abruptly reversed the vehicle, parked it, secured it and exited the vehicle." (Id.)

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

2

Plaintiff complains that Defendant Walker "quickly responded to the inmate in the wheelchair," but failed to evaluate and render aid to Plaintiff. (Id., p. 4.) Plaintiff states that the impact injured his right arm, "which was already injured and needing surgery," and his right hip. (Id., p. 3) Plaintiff asserts that "[t]his caused Plaintiff severe pain immediately, and in the forthcoming months until present." (Id.)

Following his injury, Plaintiff states that "he returned to his Unit after getting his medication, and reported his injury immediately to the nearest officer." (Id., p. 4.) Plaintiff explains that he was ordered to return to Medical but "he was approached angrily by Defendant Walker." (Id.) Plaintiff alleges that Defendant Walker inquired as to why Plaintiff did not "say something when [he] was walking the inmate in the wheelchair in." (Id., pp. 4 - 5.) Plaintiff states that he was evaluated by Medic Roberts and an Injury Assessment was completed. (Id., p. 5.) Although Plaintiff allegedly informed Medic Roberts of the "numbness and tingling in his right hand and hip area," Plaintiff states that "the exam was completed within 2 ½ minutes." (Id.) Since his injury, Plaintiff alleges that "the Medical Department has basically refused medical treatment." (Id., p. 7.) Plaintiff claims that his previously scheduled surgery was cancelled because his "orthopedic surgeon stated that the surgery was necessary, but not at this time." (Id.) Plaintiff asserts that he has "a bone impingement in his right shoulder that was not previously there prior to the incident." (Id.) Plaintiff complains he has requested a copy of his x-ray, but it has never been provided. (Id.) Although Plaintiff acknowledges prior injury to his right shoulder, Plaintiff claims that "the injury has been seriously extended due to this severe negligent act of a Government official." (Id.) Plaintiff further states that he has a "substantial amount of pain and joint clicking around the right hip area." (Id.)

Plaintiff alleges that on July 18, 2013, the Special investigative Service [SIS] required him

3

to give a statement concerning the incident. (Id., p. 6.) Plaintiff alleges his First and Fifth Amendment right to remain silent was violated when he was required to give a statement. (Id., pp. 6 - 9.) Plaintiff states that he was not "arrested or given a warning pursuant to Miranda v. Arizona." (Id., p. 6.) As relief, Plaintiff requests compensatory and punitive damages. (Id., p. 10.)

By Order entered on June 17, 2014, the undersigned noted that Plaintiff had neither paid the filing and administrative fee nor submitted an Application to Proceed *in Forma Pauperis* or Without Prepayment of Fees. (Document No. 3.) Thus, the undersigned ordered Plaintiff to either pay the Court's filing fee ($350) and administrative fee ($50) totaling $400 or obtain approval to proceed *in forma pauperis* or without prepayment of fees. (Id.) Plaintiff filed his Application to Proceed Without Prepayment of Fees and Costs on July 7, 2014. (Document No. 4.) By Order entered on July 9, 2014, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and Cost after determining that Plaintiff had stated a FTCA claim and Bivens claim alleging a violation of his Eighth Amendment rights. (Document No. 8.) By Proposed Findings and Recommendation entered the same day, the undersigned recommendation that Plaintiff's Bivens' claim alleging a violation of his First and Fifth Amendment rights be dismissed. (Document No. 10.) By Memorandum Opinion and Order entered on July 31, 2014, United States District Court Judge Irene C. Berger adopted the undersigned's recommendation, dismissed Plaintiff's Bivens' claim alleging a violation of his First and Fifth Amendment rights, and referred the matter back to the undersigned for further proceedings upon Plaintiff's FTCA claim and Bivens claim alleging a violation of his Eighth Amendment rights. (Document No. 15.)

On September 4, 2014, Defendants filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 17 and 18.) Defendants

4

contend that Plaintiff's Complaint should be dismissed based upon the following: (1) "Plaintiff's FTCA claim is time barred" (Document No. 18, pp. 5 - 6.); (2) "Plaintiff's constitutional claims must be dismissed for failure to exhaust administrative remedies" (Id., pp. 6 - 9.); (3) "Even if Plaintiff had exhausted his administrative remedies, Plaintiff's constitutional claims must be dismissed" (Id., pp. 9 - 11.); and (4) "Walker is entitled to qualified immunity" (Id., p. 12.). As Exhibits, Defendants attach the following: (1) A copy of the Declaration of Sharon Wahl (Document No. 16-1, pp. 2 - 3.); (2) A copy of Plaintiff's Administrative Tort Claim Form (Id., pp. 5 - 10.); (3) A copy of the Tort Claim Denial letter dated October 23, 2013 (Id., 12 - 14.); (4) A copy of Plaintiff's "Administrative Remedy Generalized Retrieval" (Id., pp. 16 - 23.); (5) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated July 29, 2013 (Remedy ID No. 734516-A2) (Id., pp. 25 - 26.); (6) A copy of the Declaration of Jeff Walker (Document No. 16-2, pp. 2 - 3.); and (7) A copy of the Medical Injury Assessment completed on Plaintiff on June 17, 2013 (Id., p. 5.)

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on September 5, 2014, advising him of the right to file a response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 16). (Document No. 19.) On October 6, 2014, Plaintiff filed his "Motion in Opposition to Defendants' Motion to Dismiss" and Memorandum in Support. (Document Nos. 21 and 22.) First, Plaintiff argues that the "FTCA claim should not be time barred and deserves equitable tolling." (Document No. 22, pp. 18 - 20.) Second, Plaintiff states that he "did in fact exhaust all administrative remedies that were available to him." (Id., pp. 21 - 24.) Third, Plaintiff asserts that he "has a valid constitutional claim and a statutory claim of his rights being violated." (Id., pp. 25 - 29.) Fourth, Plaintiff contends that Defendant Walker is not entitled to qualified immunity. (Id., pp. 30 - 31.) Plaintiff further argues that

5

there are genuine issues of material fact in dispute. (Id., pp. 10 - 12.)

As Exhibits, Plaintiff attaches the following: (1) A copy of Plaintiff's Affidavit (Document No. 21-1, pp. 1 - 35.); (2) A copy of Plaintiff's "Request for Administrative Remedy" dated January 7, 2013, concerning is RRC placement (Remedy ID No. 765911-F1) (Document No. 21-2, p. 49.); (3) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated June 20, 2013, concerning Plaintiff's claim of inadequate medical care (Remedy ID No. 734516-R2) (Document No. 21-1, p. 38 and Document No. 21-2, p. 1.); (4) A copy of a letter from the BOP dated June 26, 2013, acknowledging receipt of Plaintiff's administrative claim for personal injury suffered on June 17, 2013, after being struck by a medical cart (Id., p. 52.); (5) A copy of a "Receipt - Administrative Remedy" from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office dated July 9, 2013, concerning Remedy ID No. 734516-R2 (Id., p. 3.); (6) A copy of Warden Joel Ziegler's "Response to Inmate Request to Staff Member" dated July 15, 2013, regarding Plaintiff's request for compassionate release (Id., p. 43.);  (7) A copy Plaintiff's MRI report dated July 22, 2013, from Premier Imaging (Id., p. 41.); (8) A copy of Regional Director C. Eichenlaub's Response dated July 23, 2013, denying Plaintiff's appeal concerning inadequate medical care (Remedy ID No. 734516-R2) (Id., p. 2.); (9) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated July 29, 2013, concerning inadequate medical care (Id., pp. 4 - 5.); (10) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated August 13, 2013, regarding the Warden's denial of compassionate release (Remedy ID No. 748169-R1) (Id., p. 44.); (11) A copy of Plaintiff's "Request for Administrative Remedy" dated August 20, 2013, concerning Plaintiff's request for a referral to an Orthopedic Specialist (Remedy ID No. 734516-F2) (Document No. 21-1, p. 36.); (12) A copy of a "Rejection Notice" dated August 27, 2013, from the Administrative Remedy

Coordinator at FCI Beckley concerning Remedy ID No. 734516-F2 (Id., p. 37.); (13) A copy of a letter from the BOP dated August 28, 2013, concerning Plaintiff's request for a copy of his Administrative Claim TRT-MXR-2013-05737 (Id., pp. 50 - 51.); (14) A copy of a "Rejection Notice" dated August 29, 2013, from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office concerning Remedy ID No. 748169-R1 (Id., p. 45.); (15) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" dated September 8, 2013, concerning his request for compassionate release (Id., p. 46.); (16) A copy of Plaintiff's "Request for Administrative Remedy" dated September 10, 2013, regarding his complaint that he was struck by a medical cart (Id., p. 53.); (17) A copy of an "Extension of Time for Response" dated September 24, 2013, from the Administrative Remedy Coordinator at the Central Office concerning Remedy ID No. 734516-A2 (Document No. 21-2, p. 6.); (18) A copy of Plaintiff's "Request for Administrative Remedy" received on October 1, 2013, concerning is request for compassionate release (Remedy ID No. 751936-F1) (Id., pp. 47 - 48.); (19) A copy of Plaintiff's "Request for Administrative Remedy" dated October 10, 2013, concerning Plaintiff's complaint of obtaining administrative remedy forms (Id., p. 42.); (20) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" dated February 25, 2014, concerning his "FRP Refusal" status (Id., pp. 7, 11.); (21) A copy of Plaintiff's "Request for Administrative Remedy" concerning is "FRP Refusal" status dated February 25, 2014 (Remedy ID No. 774690-F1) (Id., pp. 8, 12 - 13.); (22) A copy of an Incident Report dated March 26, 2014, charging Plaintiff with "Counterfeiting or forging any documentation, article of identification, money or official paper" in violation of Prohibited Act Code 314 (Id., p. 29.); (23) A copy of a "Request for Transfer/Application of Management Variable" dated April 4, 2014 (Id., p. 28.); (24) A copy of Plaintiff's "Declaration and Affidavit" dated April

24, 2014 (Id., pp. 15 - 25.); (25) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" dated April 25, 2014, regarding his placement in SHU (Id., pp. 26 - 27.); (26) A copy of Acting Warden Mark Collins' Response dated May 13, 2014, concerning Plaintiff's IFRP refusal status (Remedy ID No. 774690-F1) (Id., p. 10.); (27) A copy of a "Returned Correspondence" from the BOP dated August 11, 2014; (28) A copy of Plaintiff's Injury Assessment dated June 17, 2013 (Id., pp. 30 - 31.); (29) A copy of an Order from this Court dated July 1, 2014, wherein the Court notes that Plaintiff stated in his April 6, 2014, letter that "he has been denied his legal effects while housed in SHU, but he wants to file a claim pursuant to the Federal Torts Claim Act (FTCA), and is fearful that his time to file has expired during his confinement in SHU" (Id., pp. 32 - 33.); (30) A copy of Plaintiff's "Declaration and Affidavit" dated April 24, 2014, addressed to SIA Hutchinson (Id., pp. 15 - 25.); (31) A copy of a letter from the BOP dated August 20, 2014, regarding the cost of documents Plaintiff requested pursuant to the Freedom of Information Act (Id., pp. 35 - 38.); (32) A copy the BOP's denial of Administrative Claim No. TRT-MXR-2014-04975 dated September 24, 2014, concerning Plaintiff's claim that prison staff lost his legal materials (Id., p. 54.); and (33) A copy of "FCI Beckley, West Virginia Photo Sheet" (Id., pp. 39 - 40.).

Also on October 6, 2014, Plaintiff filed his "Motion to Amend the Complaint" (Document No. 25) and Motion for Default Judgment (Document No. 26). By Order entered on April 29, 2015, the undersigned directed the United States to file a Reply to Plaintiff's Response concerning his claim that he was entitled to equitable tolling as to his FTCA claim. (Document No. 29.) The United States filed its Reply on May 8, 2015. (Document No. 31.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases authorized by Article III of the United States Constitution and statutes enacted by Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Subject matter jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction may be raised at any time. Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to

evidence outside the pleadings without converting the proceeding to one for summary judgment. See William v. United States, 50 F.3d 299 (4th Cir. 1995).

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

**DISCUSSION**

**1.      Motion for Default Judgment:**

On October 6, 2014, Plaintiff filed his Motion for Default Judgment. (Document No. 26.) In his Motion, Plaintiff argues that "Defendants failed to file their Answers within 20 days of the

10

filing of the Complaint." (Document No. 26.) Plaintiff explains that he "filed this action on June 16, 2014, therefore Answers should have been filed by July 5, 2014." (Id.) Plaintiff, therefore, contends that he is entitled to default judgment because Defendants "blatantly ignored Rule 12(a)." (Id.)

Rule 55(a) of the Federal Rules of Civil Procedure permits the entry of default judgment "[w]hen a party against whom affirmative relief is sought has failed to plead or otherwise defend as provided by these rules . . .." A plaintiff must produce *prima facie* evidence that service was proper. J & J Sports Productions, Inc. v. Santillan, 2012 WL 2861378, at * 4 (M.D.N.C. July 11, 2012). "A return of service generally serves as *prima facie* evidence that service was validly performed." Blair v. City of Worcester, 522 F.3d 105, 111 (1st Cir. 2008). If a plaintiff produces *prima facie* evidence, the burden shift to the defendant to provide evidence of insufficient process. Hollander v. Wolf, 2009 WL 3336012, at * 3 (S.D.Fla. Oct. 14, 2009).

After reviewing all of the pleading and filings in this case, the undersigned finds that Defendants did not default by failing to respond to Plaintiff's Complaint. The record reflects that the United States Attorney and Defendant Walker were served on July 11, 2014. (Document Nos. 12 and 13.) Rule 12(a) of the Federal Rules of Civil Procedure provides as follows:

> (2) United States and Its Agencies, Officers, or Employees Sued in an Official Capacity. The United States, a United States agency, or a United States officer or employee sued only in an official capacity must serve an answer to a complaint, counterclaim, or cross claim within 60 days after service on the United States attorney.

> (3) United States Officers or Employees Sued in an Individual Capacity. A United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer to a complaint, counterclaim, or cross within 60 days after service of the officer or employee or service on the United States attorney, whichever is later.

Thus, Defendants were not required to file their Answers or other responsive pleadings until

September 9, 2014. (Id.) Defendants timely filed their "Motion to Dismiss, or in the Alternative,

Motion for Summary Judgment" on September 4, 2014. (Document No. 16.) Accordingly, the

undersigned recommends that Plaintiff's Motion for Default Judgment (Document No. 26.) be

denied.

**2.**      **Motion to Amend:**

In his Motion to Amend, Plaintiff states that he wishes to amend his Complaint to "cover all

the grounds as well as Plaintiff's need to state a plausible claim which will show a violation of

constitutional and statutory law, as well wherein the Defendant United States also violated the law

pursuant to the FTCA." (Document No. 25, p. 1.) Plaintiff further states that his Amended Complaint

will "assist the Plaintiff in surviving this Summary Judgment as well, and will clearly show the

Defendants' misconduct in preventing him access to the courts, denying him available administrative

remedies, as well as the complete denial of adequate medical care, and to show more than de

minimus injury." (Id.)

Rule 15(a)(1) of the Federal Rules of Civil Procedure provides that a party may amend his

or her pleadings "once as a matter of course within: (A) 21 days after serving it, or (B) if the

pleading is one to which a responsive pleading is required, 21 days after service of a responsive

pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed.

R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing

party's written consent or the court's leave. The court should freely give leave when justice so

requires." Fed. R. Civ. P. 15(a)(2). "[A] motion to amend should be denied only where it would be

prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the

amendment would be futile." Marfork Coal Co. v. Smith, 2011 WL 744727 (S.D.W.Va. Feb. 23,

12

2011)(J. Berger)(citations omitted).

Based on a review of the record, the Court finds Plaintiff's Motion to Amend should be denied as the amendment would be futile. A review of Plaintiff's Amended Complaint fails to reveal that Plaintiff is asserting any new allegations or arguments. In his Motion to Amend Complaint, Plaintiff continues to assert that he is entitled to relief pursuant to the FTCA and for alleged violations of his constitutional and civil rights pursuant to <u>Bivens</u>. Although Plaintiff states that he needs to amend his Complaint to "state a plausible claim," the undersigned has already determined Plaintiff has made ample allegations of Defendants' tortious and unconstitutional conduct. (Document No. 8.) To the extent Plaintiff argues that he needs to amend his Complaint to include defenses to Defendants' dispositive motion, the undersigned finds that Plaintiff has filed a Response (Document Nos. 21 and 22)  wherein he adequately sets forth his defenses to Defendants' Motion. Accordingly, the undersigned recommends that Plaintiff's Motion to Amend (Document No. 25.) be denied.

**3.** **FTCA Claim:**

In its Motion, the United States argues that "Plaintiff's FTCA claim must be dismissed because he did not file his Complaint in a timely manner." (Document Nos. 16 and 17.) The United States notes that 28 U.S.C. § 2401(b) provides that "a plaintiff has six months after the denial of his claim to bring an action in the appropriate Untied States District Court." (Document No. 17, p. 5.) The United States contends that Plaintiff's administrative tort claim was denied on October 23, 2013, and Plaintiff filed his FTCA action nearly eight months later on June 16, 2014. (<u>Id.</u>) Therefore, the United States asserts that the Court lacks subject matter jurisdiction "[b]ecause the statute of limitations is a jurisdictional prerequisite to filing suit under the FTCA." (<u>Id.</u>)

13

Plaintiff argues that his FTCA claim should not be dismissed because he is entitled to equitable tolling. (Document Nos. 21 and 22.) Plaintiff explains BOP officials "prevented Glowka from filing this suit in the District Court." (Document No. 22, pp. 18.) Plaintiff alleges BOP officials denied him access to the courts, access to the law library, and the possession of his "legal work" for approximately 35 days while he was confined in SHU. (Id.) Plaintiff further claims that BOP officials "stole Glowka's almost completed Tort Claim he was about to file in the U.S. District Court." (Id.) Plaintiff asserts that he "even expressed his concerns to this Honorable Court four times, which apparently only two letters made it wherein he wrote to the District Court informing of the misconduct." (Id.) Plaintiff argues that he "exercised due diligence" and he "was not ignorant to the filing deadlines." (Id.) Plaintiff further complains that "Defendants tried to persuade Plaintiff, as they did the other two victims, to accept the settlement offer and told him that suit could not be filed in the U.S. District Court because we had no evidence of more than a de minimus injury." (Id.) Plaintiff, therefore, argues that he is entitled to equitable tolling. (Id.)

In Reply, the United States acknowledges that "[o]n April 22, 2015, the Supreme Court determined that while the FTCA's time bar is valid, it is not jurisdictional." (Document No. 31.) The United States, however, argues that "[e]quitable tolling does not apply in the instant matter as the Defendants did not wrongfully deceive or misled Plaintiff to conceal the existence of a cause of action, nor was there any misconduct by Defendants that prevented Plaintiff from filing his claim on time." (Id., p. 3.) The United States contends that Plaintiff was not denied access to the courts. (Id., pp. 3 - 6.) The United States notes that Plaintiff was able to send letters to District Judge Berger, file administrative remedies, and file a complaint with the Special Investigate Agent ["SIA"]. (Id.) Accordingly, the United States argues that Plaintiff is not entitled to equitable tolling.

14

(Id.)

The Federal Tort Claims Act ["FTCA"] is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. See 28 U.S.C. § 2675(a).[2] See also Bellomy v. United States, 888 F. Supp. 760 (S.D.W.Va. 1995). Thus, before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.11 and 543.30 to 543.32. The FTCA further provides that a tort claim against the United States "shall be forever barred" unless (1) the claim is presented to the "appropriate Federal agency within two years after such claim accrues," and (2) the claim is brought to Federal court "within six months" after the agency acts on the claim. See 28 U.S.C. § 2401(b). Recently, the United States Supreme Court held that the time limitations under the FTCA are non-jurisdictional and subject to equitable tolling. United States v. Kwai Fun Wong, ___ S.Ct. ___, 2015 WL1808750 (April 22, 2015). "[E]quitable tolling is appropriate only 'where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action.' Indeed, the doctrine of equitable tolling is based on the view that a defendant should not be encouraged to engage in 'misconduct that prevents the

---

[2] Title 28 U.S.C. § 2675(a) provides as follows:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

plaintiff from filing his or her claim on time.'" <u>Kokotis v. United States Postal Service</u>, 223 F.3d

275, 280-81(2000)(quoting <u>English v. Pabst Brewing Co.</u>, 828 F.2d 1047, 1049 (4th Cir. 1987).

First, the undersigned must consider whether Plaintiff's FTCA claim was filed with the Court

"within six months" after the BOP denied his administrative tort claim. <u>See</u> 28 U.S.C. § 2401(b).

The record reveals that the BOP denied Plaintiff's administrative tort claim by letter dated October

23, 2013. (Document No. 16-1, pp. 12 - 14.) Approximately eight months later on June 16, 2014,

Plaintiff filed his Complaint with this Court. (Document No. 1.) Thus, the undersigned finds

Plaintiff's FTCA claim was clearly untimely as it was filed more than six months after the denial

of his administrative tort claim by the BOP.

Next, the Court will consider whether Plaintiff is entitled to equitable tolling. The record

reveals that the BOP's denial letter clearly put Plaintiff on notice that he had six months to file an

action with the Court if he was dissatisfied with the BOP's determination. (Document No. 16-1, pp.

12 - 14.) The BOP's letter stated as follows: "If you are not satisfied with this determination, you

have six months from the date of this letter to bring suit in an appropriate United States District

Court, should you wish to do so." (<u>Id.</u>) Although Plaintiff acknowledges that he was well aware of

the six month deadline, he argues that he is entitled to equitable tolling because BOP officials denied

him access to the courts. A review of the record, however, does not support Plaintiff's claim that

BOP officials prevented him from timely filing his claim. The record reveals that Plaintiff had the

ability to file administrative remedies and send letters to the Court. The record reveals that Plaintiff

filed a "Request for Administrative Remedy Informal Resolution Form" and a "Request for

Administrative Remedy dated February 25, 2014, concerning his "FRP Refusal" status (Remedy ID

No. 774690-F1). (Document No. 21-2, pp. 7 - 8, 12 - 13.) Plaintiff was placed in SHU on March 26,

2014.[3] (Document Nos. 21-1, pp. 23 - 24.) By letters dated April 6, 2014, and May 13, 2014, Plaintiff notified the Court in Civil Action 5:13-15324 that he was being "denied my legal documents, paper, pens, stamps, envelopes" and he was concerned about the time period for filing his FTCA claim.[4] (Civil Action 5:13-15324, Document Nos. 18 and 19.) On April 23, 3014, Plaintiff filed a Request for Administrative Remedy challenging his disciplinary action (Remedy ID No. 776497-F1). (Document No. 16-1, p. 23.) By "Declaration and Affidavit" dated April 24, 2014, Plaintiff submitted a complaint to the SIA at FCI Beckley. (Document No. 21-2, pp. 15 - 25.) Based upon the foregoing, the undersigned finds that Plaintiff is not entitled to equitable tolling because there is no evidence that BOP officials wrongfully deceived, misled, or prevented Plaintiff from timely filing his FTCA claim with this Court. The undersigned, therefore, respectfully recommends that the District Court grant the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" regarding Plaintiff's FTCA claim.

**4.    Bivens Claim:**

    **A.    Exhaustion of Administrative Remedies.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust

---

[3] Plaintiff argues that BOP officials improperly charged him with Counterfeiting and Forging a Document resulting in his placement in SHU. (Document No. 21-1, pp. 23 - 24 and Document No. 22, pp. 8 and 13.) Plaintiff alleges that when he was making a copy of an Affidavit in support of his FTCA claim, BOP officials discovered the Affidavit and charged him with the above offense to prevent him from timely filing this action. (*Id.*) The record, however, does not support Plaintiff self-serving statement. In his "Declaration and Affidavit" submitted to the SIA, Plaintiff stated that the document in issue was a Freedom of Information Act Request that he was preparing for another inmate. (Document No. 21-2, pp. 22 - 23.) In Plaintiff's letter addressed to District Judge Berger, Plaintiff acknowledged that he was "given a minor infraction for copying a FOIA Form."(Civil Action 5:13-15324, Document No. 19, p. 1.)

[4] On June 24, 2013, Plaintiff filed a Section 2241 Petition with this Court initiating Civil Action 5:13-15324. (Civil Action No. 5:13-15324, Document Nos. 1 - 6.)

available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[5] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

---

[5] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2nd Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. <u>See</u> <u>Jones v. Bock</u>, <u>supra</u>; <u>Anderson v. XYZ Correctional Health Services</u>, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative

remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted))

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the

20

appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion, Defendants contend that Plaintiff did not fully exhaust his administrative remedies regarding "his claims against Walker and his alleged injuries from the medical cart incident." (Document Nos. 16 and 17.) In support, Defendants submit the Declaration of Ms. Sharon Wahl, a Paralegal for the Consolidated Legal Center at FCI Beckley. (Document No. 16-1.) Ms. Wahl states that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id.) Ms. Wahl explains that she also has access to inmates' medical records. (Id.) Specifically, Ms. Wahl states as follows in her Declaration (Id., pp. 1 - 2.):

7.      Plaintiff did not exhaust his administrative remedies relating to his claims against Walker and his alleged injuries from the medical cart incident.

8.      Plaintiff had filed an administrative remedy complaining about his medical care at FCI Beckley prior to the medical cart incident.

9.      When Plaintiff filed his final appeal with the Central Officer concerning his medical treatment prior to the incident, Plaintiff mentioned the incident with the medical cart.

(Id., p. 3.). Although Plaintiff mentioned the incident with the medical cart in his appeal with the Central Office, Defendants argue that the "regulations require that an inmate exhaust his administrative remedies on an issue at every level of the administrative remedy process." (Document No. 17, p. 8.) Defendants, therefore, argue that Plaintiff's Bivens claim regarding "the cart incident and any medical treatment from that incident . . . must be dismissed." (Id., p. 9.)

In Response, Plaintiff states that he "did in fact exhaust all administrative remedies that were available to him." (Document No. 22, pp. 21 - 24.) Plaintiff claims he attempted to exhaust, but the administrative remedy procedure is flawed because the administrative remedies forms are "susceptible to being delayed or destroyed." (Id., pp. 21 - 22.) Plaintiff complains that prison staff delay the administrative remedy process making it "a long drawn out process that usually fades the desire of the inmate from future filing." (Id., p. 22.) Plaintiff argues that the administrative remedy process is only "a tool for the BOP to deter filings and delay the filings, as well as cover up or fix the problem, without the remedy ever being able to be achieved." (Id., p. 23.) Plaintiff claims that he "has went through a plethora of attempts to file and re-file administrative remedy requests even though the outcome wasn't going to be more than a plain denial, as Glowka could not even request anything, but none the less followed procedure as required." (Id.) Plaintiff alleges that it usually takes "one months time from the date of the Informal Resolution completion and the Warden

receiving the turned in BP-9 request." (Id.) Plaintiff asserts that the "whole process is a sham." (Id.) Despite the foregoing, Plaintiff states that he "attempted, and did, exhaust" his administrative remedies. (Id., p. 24.)

Based upon a review of the record, the undersigned finds that Plaintiff fully exhausted Administrative Remedy No. 734516. Administrative Remedy No. 734516, however, was initiated prior to Plaintiff being struck by the medical cart[6] and involved his claim that he was being denied adequate medical care at FCI Beckley. Plaintiff failed to exhaust his instant claims that (1) Defendant Walker acted with deliberate indifference by hitting him with the medical cart and failing to render immediate aid, and (2) staff failed to provide adequate medical care for injuries Plaintiff suffered as a result of being struck by the medical cart. The record is void of any evidence that Plaintiff fully exhausted his administrative remedies concerning the foregoing claims. Although Plaintiff raised the issue of being struck by the medical cart in his "Central Office Administrative Remedy Appeal" filed on July 29, 2013 (Remedy No. 734516-A2), this was the first time in the administrative process that Plaintiff raised the claim. (Document No. 16-1, pp. 25 - 26.) Claims are precluded if not raised at all three levels of the administrative remedy process.  Everett v. Francis, 2010 WL 1490479 (N.D.W.Va. April 13, 2010)(To exhaust a claim properly, it must be raised in all three steps), aff'd, 390 Fed.Appx. 266 (4th Cir. 2010); also see 28 C.F.R. § 542.15(b)(2)(an inmate may not raise in an appeal issues not raised in the lower level filings).

Furthermore, the record indicates that on September 20, 2013, Plaintiff filed a "Request for Administrative Remedy" regarding his complaint that he was struck by a medical cart. (Document

---

[6] Plaintiff filed his Administrative Remedy Request on May 15, 2013, regarding Remedy Id. 734516-F1. (Document No. 16-1, p. 17.) Plaintiff was struck by the medical cart on or about June 17, 2013.

No. 21-2, p. 53.) There is no indication, however, that Plaintiff fully exhausted this claim. Plaintiff appears to contend that exhaustion should be excused because prison officials at FCI Beckley delayed or failed to timely respond to his administrative remedy requests. Section 542.18 provides that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. Plaintiff, however, failed to consider any absence of a response as a denial and proceed to the next level. Thus, Plaintiff's failure to exhaust is not excused based upon prison officials' alleged failure to timely respond.

Finally, the record reveals that Plaintiff submitted an administrative tort claim on June 25, 2013, wherein he alleged that he suffered injuries after being struck by a medical cart on June 17, 2013 (Administrative Claim Number TRT-MXR-2013-05737). (Document No. 16-1, pp. 5 - 10 and Document No. 21-2, p. 52.) The BOP denied Plaintiff's administrative tort claim by letter dated October 23, 2013. (Id., pp. 12 - 14.) Although Plaintiff contends that he properly filed administrative remedies with the prison, the exhaustion requirements concerning FTCA and Bivens actions differ.[7] Having examined Plaintiff's exhibits, the Court finds that Plaintiff did not fully exhaust his

---

[7]     Exhaustion requirements concerning FTCA and *Bivens* actions differ. *See Davis v. United States*, 2007 WL 3473275 (N.D.W.Va. Nov. 13, 2007); *Murphy v. Inmate Systems Management*, 2008 WL 793631 (S.D.W.Va. Mar. 20, 2008). For FTCA purposes, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.11 and 543.30 to 543.32. The administrative process which inmates must exhaust when they have complaints under the FTCA is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. *Id.*, § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, *Id.*, §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, he may file suit in the District Court within six months of the mailing of the denial. *Id.*, § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

administrative remedies concerning his <u>Bivens</u> claim. Accordingly, Plaintiff's claims regarding the medical cart incident and the inadequate medical treatment for injuries suffered from the medical cart incident should be dismissed for failure to exhaust.

**B.    Defendant Walker's Act of Striking Plaintiff with Medical Cart.**

Although Plaintiff did not fully exhaust his claim that Defendant Walker acted with deliberate indifference in striking him with the medical cart, the undersigned will briefly consider the merits of his claim. The allegations contained in Plaintiff's Complaint concerning Defendant Walker do not present a claim of constitutional magnitude. The undersigned finds that Plaintiff's general allegation that Defendant Walker negligently hit him with the medical cart is insufficient to state a claim under the Eighth Amendment. It is well established that an assertion of mere negligent conduct is not enough to constitute an Eighth Amendment violation. <u>See</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); <u>Miltier v. Beorn</u>, 896 F.2d 848, 852 (4th Cir. 1990). Furthermore, there is no allegation that Defendant Walker deliberately struck Plaintiff with the medical cart. Plaintiff alleges that Defendant Walker was sitting in the medical cart and "tried to re-adjust his position, in doing so, [he] leaned forward [placing] his feet down on the vehicle's floor board and the vehicle abruptly came lurching forward." (Document No. 1, pp. 2 - 3.) Plaintiff further stated that Defendant Walker "was yelling 'watch out, watch out.'" (Document No. 16-1, p. 7.) Thus, Plaintiff's allegations of negligent conduct cannot establish that Defendant Walker acted with deliberate indifference. Based on the foregoing, the undersigned recommends that Plaintiff's <u>Bivens</u> claim that Defendant Walker acted with deliberate indifference by hitting him with the medical cart be dismissed.

**C.    Defendant Walker's Failure to Render Immediate Aid.**

Although Plaintiff did not fully exhaust his claim that Defendant Walker improperly failed

to render aid, the undersigned will briefly consider the merits of his claims. Plaintiff argues that Defendant Walker acted with deliberate indifference when he failed to render immediate aid after he was struck by the medical cart. In his Declaration, Defendant Walker explains as follows:

> An inmate in a wheelchair was directly in front of the cart. The cart struck the side of that inmate's wheelchair and pushed it sideways before I could gain control of the cart. I immediately asked all other inmates in the vicinity if anyone else was involved, and all of them denied any injury. I escorted the inmate in the wheelchair to the medical department for a chest x-ray and an injury report. I did not conduct an injury assessment on Plaintiff because I immediately attended to the inmate in the wheelchair who had been hit, because Plaintiff did not report being struck when asked immediately following the accident, and because I did not observe Plaintiff being struck.

(Document No. 16-2, p. 2.) The allegations in Plaintiff's Complaint are consistent with the foregoing. (Document No. 1.) Plaintiff indicates that he was concerned for the welfare of the inmate in the wheelchair and believed that inmate's injuries to be more serious than Plaintiff's injuries. (Document No. 1 and Document No. 16-1, p. 7.) Plaintiff acknowledges that he continued through the "pill line" to obtain his medication and reported his injury to the nearest officer after he returned to his unit because his "injuries were not life threatening." (Id.) Plaintiff acknowledges that he was instructed to report to the medical department. (Document No. 1.) The record reveals that Plaintiff was evaluated by the medical department the same day as the incident. (Document No. 16-2.) The medical department examined Plaintiff finding no visible signs of injury, but noting that Plaintiff had a prior right shoulder injury. (Document No. 16-2, p. 5.) The Injury Assessment reveals that Plaintiff was injured on June 17, 2013, at approximately 3:20 p.m., and Plaintiff was evaluated by the medical department at 3:52 p.m. (Id.) Therefore, Plaintiff appears to have received timely medical treatment once he notified prison officials that he had been struck by the medical cart. Thus, the Court finds that Plaintiff did not suffer an injury requiring immediate medical attention.

Accordingly, the undersigned concludes that the Defendant Walker did not act with deliberate indifference by failing to render immediate aid.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 16), **DENY** Plaintiff's "Motion in Opposition to Defendants' Motion to Dismiss" (Document No. 21), **DENY** Plaintiff's Motion for Default Judgment (Document No. 26), **DENY** Plaintiff's Motion to Amend Complaint (Document No. 25), **DISMISS** Plaintiff's Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94

27

(4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: May 27, 2015.

R. Clarke VanDervort
United States Magistrate Judge

28